UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
MILTON ABELES, INC.,                              :
                              Plaintiff,          :
                                                  :           **ORDER ADOPTING**
_____                  :           **REPORT AND RECOMMENDATION**
                                                  :           03-CV-6111 (DLI) (WDW)
                     -against-                     :
                                                  :
FARMERS PRIDE, INC., d/b/a BELL &                 :
EVANS,                                             :
                              Defendant.           :
------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff Milton Abeles, Inc. ("Abeles") brought suit against Farmers Pride, Inc. ("Farmers Pride") alleging that Farmers Pride (1) breached the exclusive distribution agreement between it and Abeles; (2) tortiously interfered in Abeles's relationships with sub-distributors; (3) engaged in unfair competition; and (4) was unjustly enriched by Abeles's effort to build goodwill between it and Abeles's sub-distributors.  Farmers Pride brought a counterclaim against Abeles for payment of $911,674.35 allegedly owed by Abeles for goods sold and delivered.  Farmers Pride moved for summary judgment, requesting that the court dismiss all of Abeles's claims.  Further, Farmers Pride requested that the court grant it summary judgment on its counterclaim.  By order dated July 19, 2006, this court referred the motion to U.S. Magistrate Judge William D. Wall for preparation of a Report and Recommendation ("R&R").  Judge Wall issued a R&R on March 30, 2007 and recommended that the court grant Farmers Pride's motion for summary judgment except as to Abeles' claims for unfair competition, conversion, unjust enrichment, and quantum meruit, and that the court grant Farmer's Pride's motion as to its counterclaims. Abeles and Farmers Pride both filed timely objections to the R&R on April 14, 2007.  For the reasons set forth below, the court adopts

the R&R in its entirety.

## Statement of Facts

The court adopts the factual findings in the R&R, familiarity with which is assumed for purposes of this order.

## Discussion

<u>Standard of Review</u>

When reviewing a magistrate judge's report, a district judge must make a *de novo* determination with respect to those parts of the R&R to which any party objects. The district court may then "accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b); *see also United States v. Raddatz,* 447 U.S. 667, 673-76, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).

<u>Summary Judgment Standard</u>

Abeles takes issue with the summary judgment standard employed by Judge Wall. Abeles claims that summary judgment is only appropriate if there is a "complete failure of proof" on the part of the non-moving party. *See* Abeles's Objections to the R&R ("Abeles's Objections") at 4. Abeles thus contends that summary judgment is inappropriate if it presents *any* evidence that tends to support its claims, or at least raises a material issue of fact with respect to its claims. *Id.* The court disagrees and finds that the magistrate judge applied the appropriate summary judgment standard.

Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. The court must view all facts in the light most favorable to the non-

moving party but "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).  In order to defeat a summary judgment motion, the non-movant carries only "a limited burden of production," but "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.' " *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004) (internal citations omitted).  Those specific facts must be more than "conclusory statements, conjecture, or speculation." *Opals on Ice Lingerie v. Body Lines, Inc.*, 320 F.3d 362, 370 n. 3 (2d Cir. 2003) (quoting *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996)).

The Supreme Court has recently revised the summary judgment standard by requiring the court essentially to weigh the evidence presented by the non-moving party before allowing that evidence to be used to defeat a motion for summary judgment.  Under the new standard, evidence presented by the non-moving party that is "blatantly contradicted by the record" should not be accepted by the court for purposes of defeating a motion for summary judgment. *Scott v. Harris*, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007).  Indeed, as noted below, Judge Wall found that some of Abeles's contentions were blatantly contradicted by the record.  For example, Abeles claims that Farmers Pride tortiously interfered in its contracts with its sub-distributors, but the record demonstrates that there were no such contracts.[1]  R&R at 16.

---

[1]  Viewing all the evidence in the light most favorable to Abeles, Judge Wall found that, even if there were oral contracts between Abeles and its sub-distributors, the contracts were terminable at will and "therefore cannot form the basis for a cause of action for tortious interference." R&R at 16.  Since Abeles's sub-distributors' principals testified to the lack of contracts, and Abeles was not able to present any evidence of contracts, under the Supreme

Judge Wall also correctly observed that Abeles, as the non-moving party, did not comply with Local Rule 56.1 by providing a "correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party." R&R at 8 (*quoting* Loc. Civ. R. 56.1 (b)). Instead, Abeles required the court to sift through a collection of allegations which purport to be a Local Rule 56.1 Counter-Statement. Significantly, Abeles's counter-statement does not refute many of Farmers Pride's facts and facts that are unopposed by Abeles cannot be used to create issues of material fact. *See Alliance Security Products, Inc. v. Fleming Co.,* 471 F.Supp.2d 452 (S.D.N.Y. 2007).

## Breach of Contract

The R&R recommends dismissing Abeles's breach of contract claims. Abeles's primary objection is that Judge Wall granted summary judgment despite some evidence that contracts existed. Abeles's Objections 5. It is undisputed that only oral agreements existed between the parties, and there were no written agreements. Thus, viewing in the light most favorable to Abeles its allegation that binding oral agreements governed the parties' relationship, the issue is then whether these oral agreements were valid in light of New York's Statute of Frauds, codified in New York General Obligations Law § 5-701. R&R 8. Judge Wall found that the oral agreements did not satisfy the Statute of Frauds and, upon *de novo* review, this court agrees.

As an initial matter, the existence of a contract is an issue of law for the court to determine based on the undisputed facts. *See Ronan Associates, Inc. v. Local 94-94A-94B, Intern. Union of Operating Engineers, AFL-CIO*, 24 F.3d 447, 449 (2d Cir. 1994) ("[u]nder traditional principles of

---

Court's holding in *Harris,* Judge Wall need not have even entertained Abeles's assertion that contracts existed since this assertion is blatantly contradicted by the record.

contract law, questions as to what the parties said, what they intended, and how a statement by one party was understood by the other are questions of fact; however, the matter of whether or not there was a contract, in light of the factual findings on these questions, is an issue of law"); *Cortland Asbestos Products, Inc. v. J. & K. Plumbing & Heating Co.*, 33 A.D.2d 11, 12, 304 N.Y.S.2d 694, 696 (1969). Here, the undisputed facts demonstrate that the contract was not valid under the Statute of Frauds.

The Statute of Frauds only applies to contracts that cannot be completed within one year. *See* N.Y. G.O.L. § 5-701. First, the record is clear that the oral agreement could not be completed within one year since (1) Richard Abeles, Abeles's principal, testified that the oral agreement was to last "five to ten years;" and (2) the agreement's duration was indefinite, unless Abeles breached the agreement by not performing, in which case Farmers Pride could terminate it. R&R 11. If the only way to complete a contract within one year is to breach the contract, the contract does not satisfy the Statute of Frauds. *See Alan Skop, Inc. v. Benjamin Moore, Inc.,* 909 F.2d 59, 65 (2d Cir. 1990).

Abeles contends that, even if the agreement could not be completed within a year, the Statute of Frauds does not apply because it partially performed the contract based on the representations of Farmers Pride. Abeles's Objections 6-7. Judge Wall, however, found that, as a matter of law, there was no partial performance. A *de novo* review of the record indicates that Judge Wall was correct.

In order for the alleged oral agreement between Abeles and Farmers Pride to be enforceable despite the Statute of Frauds, Abeles must have partially performed the contract, and the partial performance must be "unequivocally referable to the agreement." *Anostario v. Vicinanzo*, 59 N.Y.2d 662 (1983). In order to meet this standard, Abeles must demonstrate the conduct was "'unintelligible

or at least extraordinary', explainable only with reference to the oral agreement." *Id. (citing Burns v. McCormick*, 233 N.Y. 230, 232, 135 N.E. 273 (1922)); *Shaftel v. Dadras*, 39 F. Supp. 2d 217, 230 (E.D.N.Y. 1999) (noting that the requirement that conduct be explainable only with reference to the agreement is strict and "if the performance is 'reasonably explained' by the possibility of other reasons for the conduct, the performance is equivocal and the Statue of Frauds bars enforcement")(citing *Anostario*, 59 N.Y.2d at 664)).

The evidence indicates that Abeles is a food distributor, and therefore was required to perform certain activities in its regular course of business. Among those activities were maintaining relationships with sub-distributors, promoting its supplier's products, selling only to the stores designated by the supplier and providing information to its supplier. Judge Wall rightly concluded that none of these actions were "unequivocally referable to the agreement." *See, e.g., Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v. Aegis Group Plc,* 150 F.3d 194, 196 (2d Cir. 1998) ("because the existence of an oral agreement must be inferred from conduct, actions that might well have been undertaken in fulfillment of the agreement but could also have been done for entirely different reasons are insufficient to prove the existence of the agreement and, hence, to justify a court ordering specific performance of it."); *Lowinger v. Lowinger*, 287 A.D.2d 39, 45, 733 N.Y.S.2d 33, 38 (2d Dep't. 2001) (court determined that plaintiff's conversion to Judaism was not unequivocally referable to mother-in-law's alleged oral promises because there were other motives for her conversion aside from alleged promises, namely pressure from her husband to convert so that children could attend orthodox school).

Abeles contends that Judge Wall made a factual finding when he determined that its conduct was not explainable only by reference to the oral agreement. However, what Judge Wall actually

found was that, as a matter of law, Abeles has not presented evidence that would allow a reasonable jury to conclude that its conduct was only explainable by reference to the oral agreement. This finding was well within the court's powers. *See Kidz Cloz, Inc. v. Officially For Kids, Inc.,* 320 F. Supp.2d 164, 147 (S.D.N.Y. 2004).

Implied Covenant of Good Faith and Fair Dealing

Judge Wall found, and the court agrees, that because there is no contract between Abeles and Farmers Pride, there was no implied covenant of good faith and fair dealing. These claims are also dismissed.

Tortious Interference with Economic Relationships

To state a claim for tortious interference with prospective contractual relations, Abeles must allege: (1) that it had a business relationship with a third party; (2) that the defendants knew of that relationship and intentionally interfered with it; (3) that the defendants either acted solely out of malice or used wrongful means; and (4) that the defendants' interference caused injury to plaintiff's relationship with the third party. *See Berwick v. New World Network Intern*., Ltd., 06 CIV. 2641**,** 2007 WL 949767, *14 (S.D.N.Y. Mar. 28, 2007). When the defendant did not interfere in a binding contract, but only in a "business relationship," the plaintiff is required to demonstrate that "the defendant's conduct . . . amount[s] to a crime or an independent tort. Conduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other non-binding economic relations." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 191, 818 N.E.2d 1100, 1104, 785 N.Y.S.2d 359 (2004) (internal quotations omitted).

A *de novo* review of the record indicates that Abeles did not have contracts with its sub-

distributors, but rather had oral agreements with them to do business on an order-by-order basis. *See* Defendant's Rule 56.1 Statement ("Rule 56.1 Stat.") ¶¶ 17-18.[2]  Here, there is no allegation that Farmers Pride did anything criminal or tortious to Abeles.  Farmers Pride simply offered to change the way in which it supplied Abeles's sub-distributors in response to complaints that the current system was not functioning adequately.

Abeles objects to the R&R by asserting that "some degree of economic pressure" suffices to make out a claim tortious interference with prospective contractual relations.  Abeles's Objections at 9.  Abeles is mistaken.  The law is clear that applying "some degree of economic pressure" no longer suffices to state a claim for tortious interference with prospective economic relations.  *See Treppel v. Biovail Corp.,* 03 CV 3002, 2005 WL 427538, *5 (S.D.N.Y. Feb. 22, 2005) (explaining the evolution of the "wrongful means" element of tortious interference with contractual relations).

Finally, Abeles would not have to demonstrate that Farmers Pride engaged in criminal or tortious activity if it can demonstrate that Farmers Pride's acted with "the sole purpose of inflicting intentional harm on plaintiffs." *See NBT Bancorp Inc. v. Fleet/Norstar Financial Group Inc.,* 215 A.D.2d 990, 991, 628 N.Y.S.2d 408, 410 (3rd Dep't. 1995).  The record indicates that Farmers Pride's contact with Abeles's sub-distributors was "motivated by economic self interest" – Farmers Pride's interest in having its product distributed and being paid accordingly.  Therefore, Abeles's cause of action for tortious interference with prospective contractual relations fails.  *See South Fourth Street Properties, Inc. v. Muschel,* 1 A.D.3d 347, 766 N.Y.S.2d 851 (2d Dep't. 2003) (granting a motion to dismiss where "[t]here is no allegation that [defendant] used unlawful or

---

[2]     Abeles's Counter-Statement of Material Facts ("Counter-Statement") does not refute the non-existence of sub-distributor agreements, and therefore this fact is deemed admitted.

improper means to interfere with the contract, and [plaintiff]'s evidence established, at best, only that Muschel's conduct had been financially motivated.").

### Abeles's Unfair Competition/Conversion/Unjust Enrichment/Quantum Meruit Claims

The R&R denies summary judgment to Farmers Pride on Abeles's unfair competition, conversion, unjust enrichment and quantum meruit claims. Because neither party objected to these recommendations, the court has reviewed them for clear error and found none. Therefore, the R&R is adopted and Abeles may continue to litigate these claims.

### Farmers Pride Claim for Goods Sold and Delivered

Farmers Pride moved for summary judgment on its counterclaim for goods sold and delivered in the amount of $911,674.35. The R&R recommended that the court grant summary judgment in favor of Farmers Pride on the counterclaim. Abeles objects to the R&R's finding and asserts that Farmers Pride claim is somehow related to a claim that Abeles has for payment from its sub-distributors. Abeles's Objections 10. However, a review of Farmers Pride's counterclaim indicates that it has no relationship to any monies that may be owed to Abeles by its sub-distributors and, furthermore, Abeles's reply to Farmers Pride's counterclaim does not assert the alleged debt from the sub-distributors as a defense to the Farmers Pride's claim for goods sold and delivered. Thus, a *de novo* review of the record indicates there is no basis for the court to reject the recommendation that summary judgment be granted in favor of Farmers Pride on its counterclaim for goods sold and delivered.

Farmers Pride next requests that the court enter judgment against Abeles for $911,674.35 at the contractual rate of 18% per annum. Opposition to Plaintiff's Objections at 10. The R&R did not specify an appropriate interest rate, but rather suggested that the statutory interest rate may be

appropriate. Pursuant to Fed. R. Civ. P. 54(b), the court declines to enter final judgment on Farmers Pride's claim for goods sold and delivered or account stated until the court can resolve Abeles's remaining claims for unfair competition, conversion, unjust enrichment and quantum meruit. The court notes, however, that in light of the fact that judgment will eventually be entered in favor of Farmers Pride for $911,674.35, the court orders that interest shall run at the New York statutory rate of 9% per annum from December 3, 2003, through the date that judgment is entered. *See* N.Y.C.P.L.R. § 5004; *Jones v. UNUM Life Ins. Co. of America*, 223 F.3d 130, 140 (2d Cir. 2000). Of course, the final judgment amount may be offset by any amount to which Abeles is entitled on its remaining claims.

## Conclusion

After a *de novo* review of those portions of the R&R to which the parties object, the court adopts Judge Wall's R&R in its entirety. Defendants' motion for summary judgment is granted except as to Abeles's claims for unfair competition, conversion, unjust enrichment and quantum meruit. Further, Farmers Pride is granted summary judgment on its claims for goods sold and delivered; however, entry of judgment thereon is stayed pending the outcome of Abeles' remaining claims and interest thereon will be calculated at the statutory rate of 9% per annum. This matter is referred to the magistrate judge for further pretrial proceedings, including settlement negotiations. SO ORDERED.

DATED:     Brooklyn, New York
             July 11, 2007

                                       /S/
                                  DORA L. IRIZARRY
                             United States District Judge