UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
                                                         :

MILTON ABELES, INC.,                  :

                                  Plaintiff,      :      **MEMORANDUM AND ORDER**

                   -against-               :      03-CV-6111 (DLI)(WDW)

FARMERS PRIDE, INC., d/b/a BELL &  :
EVANS,

                               Defendants.  :
------------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

       Before the court is defendant Farmers Pride, Inc.'s second summary judgment motion seeking to dismiss plaintiff Milton Abeles, Inc.'s remaining claims for quantum meruit and unfair competition. Defendant contends that it was plaintiff's decision to terminate their distribution agreement that caused the ensuing injuries for which plaintiff now seeks recovery. As such, defendant argues that its conduct could not have injured plaintiff. Defendant also argues that plaintiff cannot sustain its claims for quantum meruit and unfair competition. For the reasons set forth below, the court finds no reason to disturb its earlier decision allowing plaintiff to proceed on these two counts. The court assumes the parties' familiarity with the facts and procedural history, and incorporates the summary judgment standard that it provided in the prior decision. *See Milton Abeles, Inc. v. Farmers Pride, Inc.*, 03-CV-6111, 2007 WL 2028069, at *1-2 (E.D.N.Y. July 11, 2007).

## DISCUSSION

### I. Causation

       The central factual dispute is who terminated the distribution relationship between the parties that lasted from mid-July 2000 to November 2003. Both parties agree that this

termination occurred sometime between September 9 and November 25, 2003. According to defendant, plaintiff ended the distribution relationship on or around November 25, 2003, and is therefore responsible for the ensuing consequences. Defendant argues that plaintiff terminated the relationship by: (1) refusing to pay its outstanding balance; (2) telling defendant to pick up its remaining inventory; (3) initiating this lawsuit; and (4) ceasing to place new orders, which defendant was ready to ship once plaintiff paid its outstanding balance.

Not surprisingly, plaintiff blames defendant for ending their distribution arrangement. According to plaintiff, defendant terminated the relationship prior to November 20, 2003, by taking steps to cut plaintiff out of the distribution arrangement and sell poultry directly to the subdistributors. In order to accomplish this, plaintiff alleges that defendant disclosed plaintiff's confidential pricing information to the subdistributors. This information consists of the prices that defendant charged plaintiff for the poultry ("Master-Distributorship Pricing") and the prices that defendant would charge the subdistributors if it sold the poultry directly to them ("Direct-Purchase Pricing"). Plaintiff argues that defendant's disclosure "guaranteed that the only way Abeles could continue to do business with such subdistributors ultimately was to sell at either no profit or even at a loss." (Pl.'s Mem. of Law in Opp'n to Def.'s Second Summ. J. Mot. to Dismiss Pl.'s Remaining Causes of Action (Doc. 117) at 13.)

Defendant denies that it disclosed the pricing information to the subdistributors. Additionally, it argues that even if such disclosures did occur, they did not impact plaintiff's ability to sell poultry to the subdistributors. As such, defendant's conduct could not have caused the termination of the parties' distribution relationship.

With respect to the alleged pricing disclosures, the court agrees with defendant that the record does not sustain plaintiff's contention that defendant disclosed the Master-Distributorship

Pricing, but finds that there is a triable issue as to the disclosure of the Direct-Purchase Pricing. Defendant and subdistributors are the only parties that could have personal knowledge of the alleged disclosures of the Master-Distributorship Pricing, and they deny that such disclosures took place. The only evidence that supports plaintiff's allegation is the testimony of Richard Abeles (President and Chief Executive Officer of Milton Abeles, Inc.) explaining that the subdistributors told him that defendant had disclosed such information. This testimony is inadmissible hearsay and cannot be used to survive summary judgment. Fed. R. Civ. P. 56(e); *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219, (2d Cir. 2004).

There is enough evidence, however, indicating that, prior to November 25, 2003, defendant disclosed the Direct-Purchase Pricing. Defendant's contemporaneous documents as well as the deposition testimony of Bart Castellano (Vice President of Fort Meat) and Scott Sechler (Chairman and Principal Owner of Farmer's Pride) reveal that defendant sold poultry directly or arranged direct sales to the subdistributors prior to November 25, 2003. (Pl.'s Resp. to Def.'s Rule 56.1 Statement of Undisputed Material Facts at ¶ 13.) These sales create a reasonable inference that defendant provided the Direct-Purchase Pricing to the subdistributors before November 25, 2003. It is worth noting that defendant would not necessarily have to disclose the Master-Distributorship Pricing in order to take advantage of it. It is undisputed that defendant knew plaintiff's margins. Using this knowledge, defendant can provide sufficiently low direct-purchase pricing to the subdistributors to make it economically unfeasible for plaintiff to compete.

Defendant argues that even assuming that it did disclose the pricing information, such disclosures had no impact on plaintiff's ability to sell poultry to the subdistributors. To support this position, defendant relies on the deposition testimony of Richard Abeles admitting that

plaintiff's business continued as usual at the same profit margins from September 9 to November 25, 2003. (Def.'s Rule 56.1 Statement of Undisputed Material Facts at ¶ 14.) According to defendant, this belies any assertion that its conduct somehow crippled plaintiff's ability to sell poultry to the subdistributors, thus allowing defendant to usurp those business relationships. Had this been Abeles only statement on this issue, the court may be inclined to agree; however, Abeles repeatedly provided contradictory testimony that defendant's release of the pricing information made it an economic impossibility for plaintiff to continue its business. (*See*, *e.g.*, R. Abeles Deposition at 134:24-135:3.) Neither party has offered sufficient evidence to resolve this conflicting testimony. Therefore, the court denies summary judgment as to the remaining counts for lack of causation.

**II. Unfair Competition**

Defendant erroneously argues that a required element of an unfair competition claim under New York law is a showing of actual customer confusion or deception as to the origin of the product or service. The Second Circuit rejected this position in *Telecom Int'l America, Ltd. v. AT&T Corp.*, 280 F.3d 175, 198 (2d Cir. 2001), holding that an "unfair competition claim under New York law is not, therefore, as conceived by the district court, dependent upon a showing of confusion or deception as to the origin of the product or service." *See also*, *Robotic Vision Systems, Inc. v. General Scanning, Inc.*, 96-CV-3884, 1997 WL 1068696, at *5 (E.D.N.Y. Sept. 8, 1997) (explaining that unjust enrichment is not limited to allegations involving "some sort of palming off . . . ."). Unfair competition under New York law is a "broad and flexible doctrine that depends more upon the facts set forth . . . than in most causes of action." *Telecom*, 280 F.3d at 197. "[I]t is taking the skill, expenditures and labors of a competitor, and misappropriati(ng)

for the commercial advantage of one person . . . a benefit or property right belonging to another." *Id.* at 197-98 (citation omitted).

Here, plaintiff claims a property right to its distribution list of customers and subdistributors. According to plaintiff, it invested significant labor, skill, and money in developing the distribution list. Misappropriation of such confidential information may give rise to a claim of unfair competition. *See Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 209 (S.D.N.Y. 2008) (explaining that a claim of unfair competition may be based on the misappropriation of client lists, internal company documents, and business strategies) (citing *LinkCo, Inc.*, *v. Fujitsu Ltd.*, 230 F. Supp. 2d 492, 503 (S.D.N.Y. 2002) ("New York courts have recognized that unfair competition is broadly construed to include misappropriation of competitor's property, even if such property does not qualify as a trade secret."). Plaintiff originally supplied defendant with the list in order to further their joint business interests: the distribution of Bell and Evans poultry through plaintiff as the master distributor. For example, once plaintiff identified and developed the potential retail outlets for Bell and Evans poultry, it would submit those names to defendant for approval. Sometime between September 9 and November 25, 2003, plaintiff alleges that defendant converted this confidential list for an entirely different purpose. Using plaintiff's confidential information, defendant began supplying poultry directly to the subdistributors, thereby cutting plaintiff out of the distribution arrangement. As the court previously held, there are genuine issues concerning these allegations that cannot be resolved at this stage, and defendant has offered nothing new that compels a different conclusion.

### III. Quantum Meruit[1]

Defendant argues that plaintiff's quantum meruit claim to recover the value of the distribution services that it provided from 2000 to 2003 cannot be sustained because those services are covered by an unenforceable oral contract between the parties.[2] Put differently, according to defendant, in order to recover under a quantum meruit claim for services rendered, those services must be distinct from plaintiff's obligations under the unenforceable oral contract. The court disagrees. The general rule in New York is that "[t]he existence of a *valid and enforceable* written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (N.Y. 1987) (emphasis added and citations omitted). If a party fails to prove a valid, enforceable contract, however, the court may nonetheless allow recovery in quantum meruit for claims arising from the same subject matter as that contract in order to prevent unjust enrichment. *Rule v. Brine Inc.*, 85 F.3d 1002, 1011, 1014 (2d Cir. 1996) (citation omitted); *Command Cinema Corp.* v. *VCA Labs, Inc.*, 464 F. Supp. 2d 191, 200 (S.D.N.Y. 2006) (citing *Integral Control Sys. Corp. v. Consol. Edison Co.*, 990 F. Supp. 295, 303 (S.D.N.Y. 1998)). The Second Circuit has applied this rule to permit plaintiffs to recover on quantum meruit claims when the express contract is unenforceable under the statute of frauds. S*ee Grappo v. Alitalia Linee Aeree Italiane*, 56 F.3d 427, 433 (2d Cir. 1995) (holding that a plaintiff barred from enforcing a contract by the statute of frauds may nonetheless recover in quantum meruit to recover the value of the work performed); *Marcella v. ARP Films, Inc.*, 778

---

[1] Under New York law, a court analyzes quantum-meruit and unjust-enrichment claims together as a single quasi-contract claim. *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (citations omitted).

[2] Contrary to plaintiff's assertion, judicial estoppel does not preclude defendant from arguing that from 2000-2003, there was a contract, albeit an unenforceable one, between the parties. In order for judicial estoppel to apply, the court must have adopted the alleged prior inconsistent position. *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir. 2005) (citations omitted). That did not occur here. The position previously adopted by the court is that under the statute of frauds, the alleged post-2000 oral agreement between the parties would have been unenforceable.

F.2d 112, 117 (2d Cir. 1985) (explaining that under New York law, when an express contract is unenforceable by reason of the statute of frauds, a plaintiff may seek recovery under a claim of quantum meruit) (citation omitted); *see also L. Fatato, Inc. v. Miller Brewing Co.*, 582 F. Supp. 1377, 1379 (E.D.N.Y. 1984) ("A contract that is unenforceable under the state of frauds may give rise to such recovery on the basis of an implied contract.") (citation omitted).

The cases upon which defendant relies are inapposite. They stand for the unremarkable proposition that a party with a valid and enforceable written contract may not recover quantum meruit damages for matters falling within the scope of that contract, but must rely on the remedy contained in the contract. *See*, *e.g.*, *Clark-Fitzpatrick, Inc.*, 70 N.Y.2d at 388 (N.Y. 1987). "This is a far cry from the proposition that a defendant unjustly enriched because it breached an unenforceable contract may keep the benefit of the contract, thereby using the Statute of Frauds to aid in the perpetration of the fraud." *Grappo v. Alitalia Linee Aeree Italiane S.P.A.*, 975 F. Supp. 297, 302 (S.D.N.Y. 1997). The court is unaware of any cases holding that the existence of an unenforceable contract under the Statute of Frauds precludes quantum meruit recovery for services falling within the scope of the contract.[3] Because the distribution services for which plaintiff seeks recovery do not fall within the scope of a valid, enforceable agreement, plaintiff may proceed under a theory of quantum meruit.

Defendant's final argument for dismissing the quantum meruit claim is purportedly based on the court's findings that: (1) plaintiff did not have a legal right to continue as master distributor of the poultry; (2) defendants did not tortiously interfere with plaintiff's actual or potential contractual relationships with the subdistributors; and (3) defendant was entitled to the

---

[3] Defendant's reliance on *Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68 (S.D.N.Y. 1988), is misplaced. The *Radio* court assumed that the express contract between the parties was binding and enforceable. *See id*. at 71 (relying on the express language of the contract to conclude that it did not create a protectable interest in the format of the radio programs). Here, the contract is unenforceable.

7

customer identities as part of its agreement with plaintiff. None of these findings, however, preclude quantum meruit recovery for the distribution services. Specifically, plaintiff seeks to recover for the "substantial time and effort [it expended] to build and promote good will" toward defendant's products and to increase the sales of its products. (Pl.'s Am. Compl. (Doc. 35) at ¶ 68-72.) Richard Abeles testified about the specific steps that plaintiff took to accomplish this, such as developing "a way to sell some of these larger chains and maintain the competitive nature of the independent butcher," (R. Abeles Deposition at 132:15-133:3), and that he generated specific business with Stop & Shop. (*Id*. at 45:20-46:5.) There are genuine issues of material fact surrounding these allegations.

### IV. Damages

According to defendants, the court must dismiss the quantum meruit and unfair competition claims because plaintiff has not provided any evidence of the damages that it sustained under these two claims that are distinct from the damages resulting from the alleged breach of contract, a claim that the court has already dismissed. With respect to unfair competition, defendant contends that plaintiff must show damages flowing from actual customer confusion. As already explained, this is incorrect as a matter of law. Although unfair competition cases often involve trade-dress claims which may require evidence of customer confusion or deception as to the origin of product, the doctrine of unfair competition under New York law covers a much broader array of commercial impropriety and does not require such evidence. *See Telecom*, 280 F.3d at 197-98. Here, plaintiff's unfair competition claim seeks to recover for the misappropriation of its distribution list. "The proper measure of damages for unfair competition and for the misappropriation and exploitation of confidential information is the loss of profits sustained by reason of the improper conduct." *Abernathy-Thomas Engineering*

*Co. v. Pall Corp.*, 103 F. Supp. 2d 582, 606 (E.D.N.Y. 2000) (citation omitted). Plaintiff, through its expert report, has provided sufficient evidence of such potential losses to survive summary judgment.

Turning to the quantum meruit claim, contrary to defendant's assertion, plaintiff does not have to identify services for recovery that are distinct from the services covered under the alleged post-2000 unenforceable oral agreement. As previously explained, if a plaintiff fails to establish an enforceable contract, the court may nonetheless allow recovery in quantum meruit where the defendant "received a benefit from the plaintiff's services under circumstances which, in justice, preclude him from denying an obligation to pay for them." *Rule*, 85 F.3d at 1011 (citations and internal quotation marks omitted).

The court declines to consider defendant's arguments that plaintiff's expert report is unreliable because it lacks foundation, fails to follow established protocol for expert reports, and has no factual basis. These are arguments more properly raised in a motion under Federal Rules of Evidence 702 and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) prior to trial.

## CONCLUSION

For the reasons set forth above, the court denies defendant's second motion for summary judgment to dismiss the remaining unfair competition and quantum meruit claims.

SO ORDERED.

Dated: Brooklyn, New York
March 19, 2009

_____/s/_____
DORA L. IRIZARRY
United States District Judge